RECEIVED
IN ALEXANDRIA, LA
SEP 11 2009
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**ALEXANDRIA DIVISION**

| | |
|---|---|
| **RICHARD HILL**<br>LA. DOC. #130194 | **DOCKET NO. 09-CV-0402; SEC. P** |
| **VERSUS** | **JUDGE JAMES T. TRIMBLE, JR.** |
| **WINN CORRECTIONAL CENTER, ET AL.** | **MAGISTRATE JUDGE JAMES D. KIRK** |

### REPORT AND RECOMMENDATION
### TO DISMISS CERTAIN DEFENDANTS AND CLAIMS

Pro se Plaintiff Richard Hill filed the instant complaint pursuant to 42 U.S.C. §1983 on March 10, 2009. His motion for leave to proceed *in forma pauperis* was granted on April 13, 2009. Plaintiff was ordered to amend, and he filed an Amended Complaint on June 15, 2009. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC), and he is incarcerated at the Winn Correctional Center (WCC) in Winnfield, Louisiana. He claims that his constitutional right to be free of cruel and unusual punishment was denied by the following defendants: Winn Correctional Center (WCC), Dr. Pacheco, Corrections Corporation of America (CCA), CCA-Tennessee, Captain Maxwell, Lesia Coleman, Timothy Wilkinson, Virgil Lucas, Myrtle Hardwell, Nurse Russell, Pat Thomas, Angela Woods, Carl Coleman, Tim Morgan, Officer Powell, and the Disciplinary Officer Board.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

## Background

In a previous lawsuit[1], Plaintiff alleged that he underwent an operation at the LSU medical center in Pineville, Louisiana on August 30, 2006 for a ruptured appendix. Plaintiff claimed that the physician who performed the operation, Dr. Lee, discovered a medium-sized hernia during the surgery, but "turned a blind eye" and failed to repair it. Plaintiff alleged that Dr. Lee could have fixed the hernia at that time, but did not.

In the instant suit, Plaintiff complains of the same hernia. He alleges that he was forced to work in the field despite having a hernia, from August 2006 through July 2008. He alleges that, in December 2007, he began to complain to LPN Lesia Coleman about needing surgery and needing a medical "no duty" status exempting him from field work. Coleman would tell Plaintiff that, "if he could squeeze the hernia down it wasn't serious." [Doc. #1, p.4] In 2008, Plaintiff continued to complain to Coleman; he states that he showed her his hernia "sticking out his intestine wall."

Plaintiff alleges that, on June 8, 2008, Elm Unit Manager Myrtle Hardwell began to consistently "harass" Plaintiff about not going into the field to work. On June 12, 2008, Mrs. Hardwell was conducting a "work sweep" and asked Plaintiff why he was not working; Plaintiff responded that he had a hernia. Hardwell told

---

[1] Hill v. Dr. Lee, et al., 1:08-cv-1329, dismissed with prejudice under 28 U.S.C. Section 1915(e)(2)(b).

2

Plaintiff that he had to go to work anyway, and she called Sgt. Sawyer over to escort Plaintiff to "lock down." Sawyer actually allowed Plaintiff go to the field instead of putting Plaintiff in "lock down" as ordered.

Also on June 12, 2008, Plaintiff showed Warden Morgan his "large hernia poking out his stomach walls," but Morgan only told Plaintiff to submit a written request regarding the matter. Plaintiff sent the request on June 13, 2008. On June 18, 2008, Plaintiff received a response from Morgan stating that Plaintiff's medical "no duty" status had ended September 20, 2006. Plaintiff complains that Warden Morgan should have ordered Dr. Pacheco to issue a medical "no duty" status to Plaintiff.

On June 22, 2008, Plaintiff approached Warden Wilkinson walking down the Elm Unit A1 tier. Plaintiff showed Wilkinson the hernia sticking out of his stomach. Wilkinson told Plaintiff to see him the next day, but Plaintiff could not find Wilkinson the next day.

On June 24, 2008, Officer McDonald, the field officer, told Plaintiff **not** to go out into the field because of the hernia. But, when Mrs. Hardwell saw Plaintiff lying on his bed, she forced him to go to work. [Doc. #1, p.6] The next day, Officer Clark told Plaintiff **to stay in** due to his hernia. This time, when Hardwell discovered Plaintiff lying on his bed instead of working, she had Plaintiff charged with an aggravated work offense. Lt. Hayes

escorted Plaintiff to the Cypress Unit per Hardwell's instructions. When Plaintiff arrived at the Cypress Unit, he showed Cpt. Coleman his "large hernia poking out his stomach walls." Plaintiff was brought before the disciplinary board, made up of Coleman, Officer Powell, and Nurse Russell, and he was found guilty and sentenced to ten days isolation.

On July 1, 2008, Lt. Canerday and Officer McDonald sent Plaintiff to show his hernia to Coleman. Coleman called Cpt. Maxwell and told him that Plaintiff had a bad hernia. Maxwell said that he knew about the hernia, but had been told by the medical department that they did not have records of the hernia and could not do anything about it. Thus, Plaintiff was forced to work picking up pine cones and sticks, despite his pain. Plaintiff was told that if he could not keep up with the work crew, he would be locked up.

Finally, on July 2, 2008, Dr. Pacheco saw the huge hernia, which had dropped to Plaintiff's testicles. Plaintiff alleges that Pacheco issued him a medical "no duty" status, which Plaintiff received the next morning, and apologized to Plaintiff for not having issued it earlier. On July 8, 2008, Lt. Canerday told Plaintiff that he should have been issued that status long ago. Plaintiff finally had surgery to repair the hernia on August 13, 2008.

Plaintiff was ordered to amend his complaint to allege how

each defendant acted with deliberate indifference, to identify the serious risk of harm he faced, and to state what injury he suffered.

## Law and Analysis

According to Plaintiff all of the named defendants violated his constitutional rights. Rights guaranteed under the Eighth Amendment are violated only if the defendants act with *(1) deliberate indifference to (2) a substantial risk of serious harm that (3) results in injury*. Plaintiff claims that his right to adequate medical care was denied by a delay in receiving hernia surgery, and his right to be free of cruel and unusual punishment was violated by being required to perform outdoor manual labor despite his obvious medical condition.

### Medical Care

1. Delay in hernia surgery

Plaintiff's hernia was ultimately corrected through an operation on August 13, 2008. A delay in medical treatment does not constitute an Eighth Amendment violation unless the delay results in substantial harm. See Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993); Garrett v. Lee, 213 F.3d 638 (5th Cir. 2000)(unpublished)(Plaintiff's argument that doctor was deliberately indifferent based on inadequate treatment of hernia and constipation was without merit because Plaintiff was ultimately successfully treated. Plaintiff not entitled to relief for delay

in treatment because he fails to show resulting substantial harm.) Plaintiff alleges that the delay "almost [caused] a rupture" and "almost caused Plaintiff's life." [Doc. #1, p.11] He does not present any allegations that the delay in repairing the hernia actually caused or resulted in any substantial harm. Plaintiff fails to state a claim for which relief can be granted as to the delay in medical care.

2. Refusal to provide post-surgery antibiotics

Plaintiff also alleges that Dr. Pacheco denied him the antibiotics that were prescribed by the surgeon, which resulted in Plaintiff's incision site becoming infected. Plaintiff alleges that he had to be "rushed to LSU" for treatment due to Pacheco's denial. A prison official acts with deliberate indifference only if he knows that the inmate faces a substantial risk of serious harm and disregards that risk. Farmer v. Brennan, 511 U.S. 825, 847 (1994). A prison official's knowledge of a substantial risk of serious harm may be inferred if the risk is obvious. Id. at 842-43. Plaintiff alleges that Pacheco acted with deliberate indifference by refusing to treat him, especially when he knew of the risk that Plaintiff faced without the antibiotics. Plaintiff's complaint as to this issue will be served on Dr. Pacheco.

### Cruel and Unusual Punishment

1. Field Work

Plaintiff complains that Defendants Myrtle Hardwell, Captain

6

Maxwell, Chief Lucas, Warden Wilkinson, and Warden Morgan forced him to "work in the field with a hernia so severe even a lay person could recognize the need for medical attention." He also complains that since 2007 he was repeatedly denied a medical "no duty" status by LPN Lesia Coleman, Dr. Pacheco, Angela Woods, Pat Thomas, and Russell despite the obvious and severe hernia. [Doc. #5, p.1] Plaintiff alleges that he showed Warden Wilkinson and Warden Morgan his "large hernia" in June 2008, but they still refused to intervene or provide him with a medical "no duty" status. Plaintiff alleges that, on July 1, 2008, Captain Maxwell, and Chief Lucas all saw Plaintiff's "huge hernia" and still forced him to go out into the field and pick up pine cones "at the speed rate of a healthy young man." [Doc. #5, p.2] Plaintiff finally received a medical "no duty" status slip at mail call on July 3, 2008, and Hardwell still tried to make Plaintiff do manual work, ignoring the "duty status."

A prison official acts with deliberate indifference only if he knows that the inmate faces a substantial risk of serious harm, and he disregards that risk. Farmer v. Brennan, 511 U.S. 825, 847 (1994). A prison official's knowledge of a substantial risk of serious harm may be inferred if the risk is obvious. Id. at 842-43. Plaintiff alleges that his serious condition was obvious as were the risks associated with being assigned and forced to do manual work despite his hernia. Plaintiff's cruel and unusual

punishment claims will be served on the appropriate defendants.

2. Disciplinary sanction

Plaintiff alleges that Myrtle Hardwell charged him with "aggravated work offense" on June 24, 2008, despite her "knowing no human being could work like that." [Doc. #5, p.1] He complains that on June 25, 2008, at a disciplinary hearing, Carl Coleman, Sherron Russell, and Officer Powell saw Plaintiff's severe hernia "poking out" and still found him guilty of the infraction and sentenced him to ten days of isolation. When a prisoner is lawfully incarcerated, he loses many of the rights and privileges that most citizens enjoy. Madison v. Parker, 104 F.3d 765, 767 (5th Cir. 1997). Mere changes in those conditions of confinement do not implicate due process concerns. See id., at 768; see also Harper v. Showers, 174 F.3d 716, 718 (5th Cir. 1999) ("Inmates have no protectable property or liberty interest in custodial classifications."). While the states may, under certain circumstances, create rights that implicate Due Process, such rights are limited to freedom from restraints that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 478 (1995). Administrative segregation is not an atypical and significant hardship in relation to the ordinary life of a prisoner. See Martin v. Scott, 156 F.3d 578, 580 (5th Cir. 1998). Thus, absent extraordinary circumstances, administrative

8

segregation will never be grounds for a constitutional claim because it does not constitute a deprivation of a constitutionally cognizable liberty interest. Id. Plaintiff's ten day confinement in lock down did not amount to an "atypical and significant" hardship, and that claim should be dismissed.

### CCA, WCC, Disciplinary Board

Plaintiff names CCA and CCA-Tennessee as defendants based on actions of their employees. However, just as a municipal corporation is not vicariously liable upon a theory of respondeat superior for the constitutional torts of its employees, so is a private corporation not vicariously liable under §1983 for its employees' deprivations of others' civil rights. See Monell v. Dept. of Social Services, 436 U.S. 658, 694 (1978); Austin v. Paramount Parks, Inc., 195 F.3d 715, 728 (4th Cir. 1999); Street v. Corrections Corporation of America, 102 F.3d 810, 817-18 (6th Cir. 1996)(CCA cannot be held liable under §1983 on respondeat superior or vicarious liability basis). A private corporation is liable under §1983 only when an official policy or custom of the corporation causes or is the moving force of the constitutional violation. The compliant is devoid of any allegations that an official policy or custom of CCA (or "CCA Tennessee") was the moving force behind its employees' alleged deprivations. Accordingly, Plaintiff's claims against CCA and CCA-Tennessee should be dismissed as frivolous.

Plaintiff also named as defendants WCC and its disciplinary board. Federal Rule of Civil Procedure 17(b) provides that the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." Thus, Louisiana law governs whether the WCC has the capacity to be sued in this action. Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person." This term is defined by the Louisiana Civil Code as "... an entity to which the law attributes personality, such as a corporation or partnership." La. Civ. Code Ann. art. 24. A review of the Louisiana Secretary of State's corporation database suggests that WCC is not a corporation and, as such, not a juridical person. Likewise, a prison disciplinary board is not a juridical entity capable of being sued.[2] The claims against WCC and the "Disciplinary Officer Board" should be dismissed.

## Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that **only the following claims/defendants** be **DENIED and DISMISSED** with prejudice under 28 U.S.C. §1915(e)(2)(B):

- Plaintiff's medical care claim regarding a **delay in hernia surgery;**
- Plaintiff's claim regarding his **disciplinary conviction and ten days in segregation.**
- Plaintiff's claims against **CCA, CCA-Tennessee, WCC,** and

---

[2]Plaintiff named the individual members of the Board as defendants, and service will be made on those individuals.

the **Disciplinary Officer Board**;

Under the provisions of 28 U.S.C. §636(b)(1)(c) and Federal Rule of Civil Procedure 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Federal Rule of Civil Procedure 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE AND SIGNED at Alexandria, Louisiana, this 11th day of August, 2009.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE